**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**Alexandria Division**

| | |
|---|---|
| **RUN THEM SWEET, LLC, on behalf of itself and all others similarly situated,**<br><br>     **Plaintiff,**<br><br>**v.**<br><br>**CPA GLOBAL, LTD. and CPA GLOBAL NORTH AMERICA, LLC,**<br><br>          **Defendants.** | **Civil Action No. 1:16-cv-1347-TSE-TCB** |

**PLAINTIFF RUN THEM SWEET LLC'S MEMORANDUM OF LAW IN SUPPORT OF**
**UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION**
**SETTLEMENT**

## TABLE OF CONTENTS

I.    INTRODUCTION.....................................................................................................1

II.   PROCEDURAL HISTORY.....................................................................................3

III.  DISCUSSION ..........................................................................................................5

    A. **The Proposed Settlement is Fair**.................................................................6

        1.  The Posture of the Case ............................................................6

        2.  Extent of Discovery ..................................................................7

        3.  The Circumstances Surrounding the Negotiations .............................7

        4.  Experience of Class Counsel ...............................................9

    B. **The Proposed Settlement Is Adequate** ...........................................................10

        1.  The Strength of Plaintiffs' Case and the Potential
           Difficulties of Proof or Strong Defenses ..................................10

        2.  The Anticipated Duration and Expense of Additional
           Litigation ............................................................................13

        3.  The Solvency of CPA ..............................................................13

        4.  The Reaction of the Class ......................................................13

    C. **The Court Should Approve the Proposed Form of Notice and Plan for
        Providing Notice to the Settlement Class**......................................................14

    D. **The Class Should Be Preliminarily Certified and Counsel Should Be
        Appointed Class Counsel**......................................................................15

        **1.**  Numerosity.............................................................................16

        **2.**  Commonality.........................................................................16

        **3.**  Typicality .............................................................................17

        **4.**  Adequacy ............................................................................17

        **5.**  The Requirements of Rule 23(b)............................................18

           **a.**  Predominance............................................................18

           **b.**  Superiority................................................................19

           **c.**  Ascertainability ........................................................20

**6.** Class Counsel Should Be Appointed to Represent the

Settlement Class .......................................................................20

**E.** **<u>KCC Should Be Appointed Notice and Settlement Administrator</u>** .............21

**F.** **<u>Proposed Scheduled of Events</u>** .........................................................22

**IV.** **<u>CONCLUSION</u>** ...........................................................................................22

## <u>TABLE OF AUTHORITIES</u>

### <u>CASES</u>

*Amchem Prods. V. Windsor*, 521 U.S. 591 (1997) ..............................................................18, 20

*Beaulieu v. EQ Indus. Servs.*, No. 06-400,

    2009 U.S. Dist. LEXIS 133023 (E.D.N.C. Apr. 20, 2009)............................................15

*Central Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177 (4th Cir. 1993)................................5

*Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556 (E.D. Va. 1999) .........................................17

*DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70 (E.D. Va. 2006) ...........................................16, 18

*Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974)............................................................13, 15

*Eisenberg v. Gagnon*, 766 F.2d 770 (3d Cir. 1985)...................................................................17

*Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201 (E.D. Va. 2003) ....................................16, 17

*Grunin v. Int'l House of Pancakes*, 513 F.2d 114 (8th Cir. 1975)..............................................15

*Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417 (4th Cir. 2003) ....................................15, 16

*Henley v. FMC Corp.*, 207 F. Supp. 2d 489 (S.D. W. Va. 2002) ..............................................13

*In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534 (E.D. Va. 2006)......................................19

*In re Jiffy Lube Securities Litig.*, 927 F.2d 155 (4th Cir. 1991).........................................5,6, 10

*In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74 (D. Md. 1991).................................19

*In re LandAmerica 1031 Exch. Servs.,Inc. Internal Revenue Service § 1031 Tax Deferred Exch.*

    *Litig.,* No. 09-00415, 2012 U.S. Dist. LEXIS 97933 (D.S.C. Jul. 12, 2012) ................14

*In re MicroStrategy, Inc. Sec. Litig*, 148 F. Supp. 2d 654 (E.D. Va. 2001) ....................9, 10, 13

*In re NeuStar, Inc. Secs. Litig.*, No. 1:14CV885 (JCC/TRJ),

    2015 U.S. Dist. LEXIS 129463 (E.D. Va. Sept. 23, 2015).....................................6, 7, 9

*In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246 (E.D. Va. 2009)......................6, 7, 8, 9, 10, 13

*In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR (3),

    2010 U.S. Dist. LEXIS 68619 (E.D.N.C. June 11, 2010)................................................6

*Jeffreys v. Commc'ns Workers of Am.*, 212 F.R.D. 320 (E.D. Va. 2003)...................................17

*Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310,

    2009 U.S. Dist. LEXIS 89129 (E.D. Va. Sept. 28, 2009)................................................5

*Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284 (E.D. Va. 2004).........................................15, 16

*Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532 (E.D.N.C. 1995)..........................................17

*S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335 (D.S.C. 1991)................................................11

*Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183 (E.D. Va. 2015).....................................20

*Stillmock v. Weis Markets, Inc.*, 385 Fed. Appx. 267 (4th Cir. 2010).................................18, 19

*Talbott v. GC Servs., Ltd. Pshp.*, 191 F.R.D. 99 (W.D. Va. 2000)......................................18, 19

*Temp. Servs., Inc. v. Am. Int'l Group, Inc.*, No. 3:08-cv-00271-JFA,

     2012 U.S. Dist. LEXIS 86474 (D.S.C. June 22, 2012)....................................................8

*Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011)................................................................19

*Winingear v. City of Norfolk*, No. 12cv560 (HCM),

     2014 U.S. Dist. LEXIS 97392 (E.D. Va. July 14, 2014)............................................5, 6

## **STATUTES**

Fed. R. Civ. P. 23(a)(2)...........................................................................................................16

Fed. R. Civ. P. 23(b)(3)...........................................................................................................19

Rule 23(g)(1)(A)(i-iv)..............................................................................................................21

Fed. R. Civ. P. 23(e) ..................................................................................................................5

## **OTHERS**

Kaplan, T., *The Velvet Hammer:  Mediator tries to settle Morgan Hill courthouse flap*, The

Mercury News (Nov. 29, 2008) ...........................................................................n.2, 8

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiff Run Them Sweet, LLC ("Plaintiff" or "RTS"), on behalf of itself and all members of the proposed settlement class (the "Settlement Class"), respectfully submits this Memorandum of Law in support of its unopposed Motion for Preliminary Approval of Proposed Class Action Settlement (the "Motion").

## MEMORANDUM OF LAW

## I.     INTRODUCTION

Plaintiff Run Them Sweet, LLC, on behalf of itself and those similarly situated, and Defendants CPA Global Limited and CPA Global North America, LLC (together, "CPA Global" and, along with RTS, the "Parties") have reached a full and final settlement of this action, which is embodied in the Stipulation of Settlement and Release (the "Settlement Agreement") filed concurrently with the Court.

By and through its unopposed Motion, RTS seeks preliminary approval of the Settlement Agreement (a copy of which is attached as Exhibit "A" to the Motion), conditional certification of the Settlement Class and authorization to distribute notice to the Settlement Class.

After extensive litigation and settlement negotiations, the Parties agreed to a settlement that Plaintiff's Counsel believes is fair, reasonable and adequate.  The gravamen of Plaintiff's allegations was that CPA Global, a provider of patent annuity renewal services, overcharged certain clients for country and foreign exchange charges with respect to foreign patent renewal services that CPA Global performed under its contracts with clients.[1]  (Declaration of Geoffrey A. Neri ("Neri Decl.") at ¶ 3.)

---

[1] While CPA Global does not oppose the relief sought in this Motion, CPA Global does not concede the factual representations made by Plaintiff and reserves all rights if the settlement does not receive final approval.

CPA Global vigorously disputed these allegations and denied and continues to deny any wrongdoing whatsoever.  Though CPA Global maintains that it has strong, meritorious defenses to the claims alleged in the action and that it was prepared to vigorously defend all aspects of the action, CPA Global has agreed to a class-wide settlement in order to avoid the costs, burden and risks of further litigation, among other reasons.  The definition and precise contours of the settlement class have been carefully crafted by counsel to include "all former and current CPA Global patent holder clients located in the United States that: (i) were introduced to CPA Global by an introducer agent; (ii) within any calendar year in the Class Period had 20 or fewer foreign (non-U.S.) patent renewals performed by CPA Global; and (iii) did not, within any calendar year in the Class Period, have more than 40 foreign patent renewals performed by CPA Global" (the "Settlement Class").

In exchange for CPA Global's payment of $5,600,000 to the Settlement Class and certain injunctive relief concerning changes to CPA Global's invoices, the Settlement will fully release CPA Global from all claims identified in the Settlement (the "Released Claims").

The proposed Settlement Agreement is the result of extensive arms-length negotiations between the Parties and their counsel, which counsel have substantial experience in class action litigation.  The Settlement was accomplished through extensive preparation and discovery targeted at narrowing the issues and claims for purposes of litigation and class certification.  Settlement was achieved after a comprehensive mediation, which was conducted by mediator Randall Wulff, who has significant experience and success in forging class action settlements.

Plaintiff and its counsel believe that the Settlement Agreement achieved represents an excellent result for the Settlement Class in light of the considerable complexity of the case, as well as the costs, burden and attendant risks of further litigation.  Accordingly, Plaintiff respectfully

requests that the Court enter the proposed order, attached to the Settlement Agreement as <u>Exhibit 2</u> (the "Preliminary Approval Order"), that:

    (1)    preliminarily approves the Settlement;

    (2)    certifies a class for purposes of settlement under Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure;

    (3)    approves the form, substance and requirements of the proposed Notice and the methods for disseminating notice to Class Members.  (The proposed Notice is attached as Exhibit 1 to the Settlement Agreement); and

    (4)    sets the date for a Final Approval Hearing to be held no sooner than 100 days from the date of the Preliminary Approval Order, or other such time as the Court shall set, at which time the Court will consider Final Approval of the Settlement, as well as determine the amount of attorneys' fees and litigation expenses to award to class counsel, and the amount of any service award to Plaintiff.

In determining whether to grant preliminary approval, the issue presented is whether the proposed Settlement is within the range of what might be found to be fair, reasonable and adequate, such that Notice of the proposed Settlement Agreement should be provided to the Settlement Class and that a Final Approval Hearing should be scheduled.  As set forth herein, the proposed Settlement Agreement satisfies the requirements for preliminary approval.

## II.    <u>PROCEDURAL HISTORY</u>

On June 29, 2016, RTS filed a class action complaint against CPA Global in the United States District Court for the Northern District of California, captioned *Run Them Sweet LLC v. CPA Global Limited and CPA Global North America LLC*, No. 3:16-cv-03662 (N.D. Cal.).  On October 25, 2016, following motion practice, the case was transferred to the United States District Court for the Eastern District of Virginia, with case number 1:16-cv-01347-TSE-TCB (the "Action").  ECF No. 36.  RTS asserted claims for breach of contract, unjust enrichment, and violation of California's Unfair Competition Law, alleging that CPA Global overcharged certain

clients with respect to foreign patent renewal services that CPA Global performed under its contracts with clients. *See* Complaint ¶¶ 53-68, ECF No 1.

On December 9, 2016, the Court granted CPA Global's motion to dismiss the unjust enrichment and California Unfair Competition Law claims. ECF No. 57. On January 13, 2017, RTS filed an amended class action complaint against CPA Global, adding claims for fraud by concealment, breach of the implied covenant and good faith and fair dealing, unjust enrichment, false advertising in violation of Virginia Code Ann. §§ 8.01-40, 18.2-216 *et seq.*, and 59.1-68.3, and injunctive relief. ECF No. 72. CPA Global moved to dismiss these claims on January 23, 2017. ECF No. 80.

Meanwhile, the Parties conducted significant, expedited discovery and agreed to a mediation. CPA Global produced extensive discovery, per counsels' agreement and understanding that the provision of certain documents would enable the Parties to narrow the issues to be considered at mediation and make it more likely that the mediation would be productive. (Neri Decl. at ¶ 4.)

With a discovery deadline set for March 10, 2017, the Parties continued on a parallel track of trial preparation, with the understanding that this Court very rarely continues trial dates and related pretrial deadlines. (*Id.* at ¶ 5.) To this end, Plaintiff served four subpoenas on former employees and officers of CPA Global Limited in the United States. RTS also moved for and obtained letters rogatory from the Court so that it could take the depositions of up to nine former employees and officers of CPA Global Limited in the United Kingdom and France. ECF Nos. 78 and 78-1. Plaintiff engaged United Kingdom attorneys to assist in this process and prepare for CPA's opposition to these depositions once the letters rogatory were sent to the U.K. courts. (*Id.* at ¶ 6.)

On January 24, 2017, the Parties participated in a mediation conducted by Randall Wulff, Esq. With Mr. Wulff's assistance, the Parties reached an agreement on key terms of a proposed class settlement that were later memorialized in the Settlement Agreement. At the time the Settlement Agreement was reached, the Parties had engaged in contentious motion practice and substantial discovery efforts, including numerous sets of written discovery and the review of nearly 300,000 pages of documents in advance of the parties' mediation. (Neri Decl. at ¶¶ 7-8.)

## III.   <u>DISCUSSION</u>

There is a strong judicial policy in favor of settlements, especially in complex litigation. *Central Wesleyan Coll. v. W.R. Grace & Co.*, 6 F.3d 177, 185–86 (4th Cir. 1993) (acknowledging desirability of settlement in class action context); *Lomascolo v. Parsons Brinckerhoff, Inc.*, No. 08-cv-1310, 2009 U.S. Dist. LEXIS 89129, at *2 (E.D. Va. Sept. 28, 2009) (noting judicial policy favoring the resolution of litigation through settlement, particularly in class actions and other complex litigation).

Proposed class settlements must be approved by the court. Fed. R. Civ. P. 23(e). Rule 23(e) is designed to safeguard the rights of absent class members, and district courts have substantial discretion in deciding to approve a class action settlement. *In re Jiffy Lube Securities Litig.*, 927 F.2d 155, 158 (4th Cir. 1991).

Courts use a two stage process to evaluate class action settlements. *Winingear v. City of Norfolk*, No. 12cv560 (HCM), 2014 U.S. Dist. LEXIS 97392, at *10 (E.D. Va. July 14, 2014). First, the court determines whether to grant preliminary approval to the settlement and whether notice of the settlement should be distributed to the class. Notice gives the members of the class the opportunity to object, opt out, comment upon, or participate in the settlement. Once the notice process is complete, the court will evaluate the reaction of the class and determine whether the proposed settlement warrants final approval.

RTS now asks this Court to take the first step.

In deciding whether to grant preliminary approval to a proposed settlement, the court determines whether the settlement "'is within the range of possible approval,' or in other words, whether there is 'probable cause' to notify the class of the proposed settlement." *Winingear* at *10.  In *In re Jiffy Lube Sec. Litig.*, 927 F.2d 155, 158 (4th Cir. 1991), the Fourth Circuit articulated two standards that govern whether a proposed settlement meets Rule 23's requirements at the preliminary-approval stage: "fairness" and "adequacy."

## A.     The Proposed Settlement is Fair

Fairness "focuses on whether the proposed settlement was negotiated at arm's length." *In re Red Hat, Inc. Sec. Litig.*, No. 5:04-CV-473-BR (3), 2010 U.S. Dist. LEXIS 68619, at *4 (E.D.N.C. June 11, 2010).  Relevant factors include "(1) the posture of the case at the time settlement was proposed, (2) the extent of discovery that had been conducted, (3) the circumstances surrounding the negotiations, and (4) the experience of counsel in the area of [complex] class action litigation." *In re Jiffy Lube*, 927 F.2d at 159.

### 1.   The Posture of the Case

Under the first "fairness" factor, courts consider "whether the case has progressed far enough to dispel any wariness of 'possible collusion among the settling parties.'" *In re NeuStar, Inc. Secs. Litig.*, No. 1:14CV885 (JCC/TRJ), 2015 U.S. Dist. LEXIS 129463, at *24 (E.D. Va. Sept. 23, 2015) (quoting *In re The Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 254 (E.D. Va. 2009)). Here, the case was in the middle of hotly contested discovery on a tight time frame.  The parties had litigated a motion to transfer the case from California federal court, a motion to dismiss Plaintiff's claims, which was partially granted, and filed an amended complaint and were preparing to litigate a second motion to dismiss.

In the meantime, Plaintiff issued four subpoenas to U.S. witnesses, the Parties exchanged

written discovery, conducted numerous hotly disputed "meet and confer" calls and litigated a discovery motion concerning letters rogatory before Magistrate Judge Buchanan.  Plaintiff also retained a data analysis expert and U.K. counsel to help with discovery.  (Neri Decl. at ¶ 6.)

The Parties were also diligently preparing for trial, which presumably would have been scheduled for the summer of this year, and in anticipation of a quickly approaching discovery cutoff date of March 10, 2017.  ECF No. 75.  In short, prior to mediation and settlement, the Parties fought every step of the way.  "These adversarial encounters dispel any apprehension of collusion between the parties."  *In re NeuStar Inc. Secs. Litig., supra,* 2015 U.S. Dist. LEXIS 129463, at *25.

### 2.   Extent of Discovery

Under the second fairness factor, courts consider whether the case was "well-enough developed for [the parties] to appreciate the full landscape of their case[.]" *In re Mills Corp.*, 265 F.R.D. at 254.

During the discovery phase, Plaintiff obtained thousands of detailed invoices and related documents for numerous CPA Global clients. (Neri Decl. at ¶ 9.) Counsel for Plaintiff carefully analyzed these invoices using software specifically created and designed to perform that analysis. (*Id.*)  Plaintiff's data analysis expert had been engaged and was assisting in this process.  (*Id.*) After the parties reached a preliminary agreement, Plaintiff obtained additional discovery from CPA consisting of numerous data points on billing related to Plaintiff's allegations.  (*Id.*)

Consequently, discovery has progressed to the point where the Parties have a thorough assessment of the claims and defenses.

### 3.   The Circumstances Surrounding the Negotiations

Under the third "fairness" factor, courts evaluate the circumstances surrounding the settlement negotiations.  "This requires an examination of the negotiating process by which

the settlement was reached in order to ensure that the compromise [is] the result of arm's-length negotiations . . . necessary to effective representation of the class's interests." *In re Mills Corp.*, 265 F.R.D. at 255 (internal quotation marks and citation omitted).

The proposed Settlement Agreement was the result of informed and arm's-length negotiations.  In addition to the hotly contested litigation described above, the Parties reached the proposed Settlement with the assistance of nationally renowned mediator Randall Wulff.  *See Temp. Servs.*, *Inc. v. Am. Int'l Group, Inc.*, No. 3:08-cv-00271-JFA, 2012 U.S. Dist. LEXIS 86474, at *33 (D.S.C. June 22, 2012) ("[S]upervision by a mediator lends an air of fairness to agreements that are ultimately reached.").  *In re NeuStar*, 2015 U.S. Dist. LEXIS 129463, at *26 (to same effect).

Mr. Wulff is known as "The Velvet Hammer"[2] in mediation circles for his considerable acumen and genteel manner yet very firm and effective touch as a mediator.  (Neri Decl. at 10.)  Mr. Wulff's resume and record at mediating complex class actions is impressive, and includes resolving a California class-action suit against Microsoft that made up to $1.1 billion available to the plaintiffs.  (*Id.*)

Although the negotiations between the Parties leading up to mediation were highly contentious, they were grounded in discovery and informed by the exchange of detailed mediation statements and supporting evidence.  The lengthy mediation session was indispensable in analyzing the issues and obstacles to a resolution and clarifying the strengths and weaknesses of the Parties' claims and defenses.  Accordingly, the proposed settlement "resulted from arm's

---

[2]*See, e.g.*, Kaplan, T., *The Velvet Hammer:  Mediator tries to settle Morgan Hill courthouse flap*, The Mercury News (Nov. 29, 2008) (describing Randall Wulff as a "top flight mediator", "nationally renowned" and "famously known as The Velvet Hammer", among other accolades), *available at* http://www.mercurynews.com/2008/11/29/the-velvet-hammer-mediator-tries-to-settle-morgan-hill-courthouse-flap (last visited March 12, 2017).

length negotiations conducted by counsel with the experience and ability . . . necessary to effective representation of the class's interests." *In re MicroStrategy, Inc. Sec. Litig*, 148 F. Supp. 2d 654, 665 (E.D. Va. 2001) (Ellis, J) (internal quotation omitted).

### 4. Experience of Class Counsel

The final "fairness" factor looks to the experience of class counsel in the particular area of law. *In re Mills Corp.*, 265 F.R.D. at 255. "Counsel may be evaluated by their affiliat[ion] with well-regarded law firms with strong experience in the relevant field." *In re NeuStar*, 2015 U.S. Dist. LEXIS 129463, at *26 (internal quotation marks and citation omitted).

Class Counsel are experienced class actions lawyers with decades of experience. Lead counsel for the Plaintiff, Ethan Brown, Geoffrey Neri and Adam Gonnelli, have focused much of their respective practices on class actions. (Neri Decl. at ¶¶ 11-12 & Exhibits "A"-"C".) Messrs. Brown and Neri together have been counsel of record in over forty class actions and are both former members of the law firm of Latham & Watkins, LLP, where Mr. Brown was a partner in the firm's securities class action defense group. (*Id.*)

Co-lead counsel Mr. Gonnelli of the Sultzer Law Group has successfully prosecuted hundreds of class actions and is a former partner of Faruqi & Faruqi LLP, a prominent plaintiffs' class action firm. (Neri Decl. at ¶ 12.)

CPA Global was also represented by highly experienced and well-respected class action defense attorneys, Penelope Preovolos and Demme Doufekias, both partners at the law firm of Morrison Foerster, LLP. (*Id.* at 13.) Ms. Preovolos has served as lead counsel in major consumer class actions and antitrust cases, including numerous MDL matters, for more than 35 years. (*Id.*) Ms. Doufekias is co-chair of the firm's Securities Litigation, Enforcement, and White-Collar Criminal Defense Practice Group. (*Id.*)

Counsel respectfully submit that their judgment in negotiating and approving the

Settlement Agreement — as well as their opinion that the settlement is fair, reasonable and adequate —should be given due consideration in determining whether the Settlement is fair.  *See, e.g., In re Mills Corp.,* 265 F.R.D. at 255 ("this District has recognized that when Class Counsel are 'nationally recognized members of the securities litigation bar,' it is entirely warranted for this Court to pay heed to their judgment in approving, negotiating, and entering into a putative settlement.") *(quoting In re MicroStrategy,* 148 F. Supp. 2d at 665).

Accordingly, all of the *Jiffy Lube* "fairness" factors are met.

**B.    The Proposed Settlement Is Adequate**

In determining the adequacy of a settlement for preliminary approval purposes, courts within the Fourth Circuit consider the following factors: "(l) the relative strength of the plaintiffs' case on the merits, (2) the existence of any difficulties of proof or strong defenses the plaintiffs are likely to encounter if the case goes to trial, (3) the anticipated duration and expense of additional litigation, (4) the solvency of the defendants and the likelihood of recovery on a litigated judgment, and (5) the degree of opposition to the settlement."  *Jiffy Lube,* 927 F.2d at 159.

**1.  The Strength of Plaintiffs' Case and the Potential Difficulties of Proof or Strong Defenses**

The first and second factors addressing the adequacy of a settlement require the court to examine "how much the class sacrifices in settling a potentially strong case in light of how much the class gains in avoiding the uncertainty of a potentially difficult case."  *In re Mills Corp.*, 265 F.R.D. at 256.

While Class Counsel were and are optimistic that Plaintiffs' claims would prevail, they also recognize that success in this case is not assured.  *See S. Carolina Nat'l Bank v. Stone*, 139 F.R.D. 335, 340 (D.S.C. 1991) ("Although the plaintiffs . . . may firmly believe that their claims

have merit, the complexities and uncertainties characteristic of class action securities litigation, and the associated expenses of such litigation, make it appropriate for such plaintiffs to compromise their claims pursuant to a reasonable settlement.").

Some of the major obstacles Plaintiff would face if litigation continued are:

(a)   **Discovery**: CPA Global is based on the Isle of Jersey and its personnel are scattered across Europe and the United States.  Many of the former employee witnesses Plaintiff would need to prosecute its case are located in foreign jurisdictions.  Even with the Court granting Plaintiff's motion for the issuance of letters rogatory, Plaintiff would face opposition to discovery by CPA Global in those foreign jurisdictions. Plaintiff was prepared to litigate the issues in those jurisdictions, and had already retained U.K. counsel to assist in these battles, but there is no guarantee Plaintiff would have succeeded in obtaining the needed evidence, let alone before the discovery cutoff date of March 10, 2017.

(b)   **Class certification**: Plaintiff also had a challenging road ahead to obtain class certification.  Plaintiff's class certification motion would largely rest on the ability to demonstrate a common course of conduct that breached the contracts of the class members in a similar manner.  In all likelihood, the class would have to be narrowed considerably for litigation purposes, just as it was for settlement.  Many of CPA Global's contracts with larger entities and hundreds or thousands of renewals contained different terms, explanatory language, and choice of law provisions from the contracts of the proposed settlement class.  Also,

given the different types of charges in dozens of foreign jurisdictions, a damages model would be very complicated, and would likely involve conflicting expert testimony.   In addition, CPA Global's internal procedures changed over the course of the class period, which would add a further layer of complexity to an already challenging class analysis.  There is no guarantee any class would have been certified, let alone a larger one than the proposed settlement class.

(c)    **Merits:** Assuming a class was certified, CPA Global would no doubt move for summary judgment, arguing that the plain language of the contracts, and interpretations of terms such as "reasonable" favored its position.  CPA Global would also argue that class members were aware and on notice of the alleged overcharges and agreed to them anyway. While Plaintiff disagrees with these contentions, there is no guarantee a finder of fact would take Plaintiff's side.

(d)    **Damages:** If RTS succeeded in establishing CPA Global's classwide liability, there is no guarantee Plaintiff's damages model would be accepted by the Court or the trier of fact.  A damages model would have to make reference to some set of objective foreign exchange rates to compare with what CPA Global charged.  The Parties would no doubt disagree on the data set to be used, and would disagree about the extent to which any difference could be counted toward damages.  In addition, a similar analysis would have to occur with respect to country charges, and the Parties would no doubt disagree over the amount that should

have been charged and the amount of any difference that could be attributed to CPA Global's wrongdoing. The damages issue would likely have required significant investments in time and resources including experts.

In addition, there would be the possibility of an interlocutory appeal of any positive class certification ruling, and an appeal of any final judgment which would lengthen the proceedings considerably.

The settlement removes these risks and offers prompt compensation and injunctive relief.

### 2.   The Anticipated Duration and Expense of Additional Litigation

The third "adequacy" factor considers the substantial time and expense of the litigation without settlement. *In re Mills Corp.*, *supra*, 265 F.R.D. at 256. The continued litigation of this case would be unusually expensive, even for class actions, because it would involve litigation and depositions abroad with the attendant expense of local counsel and extensive travel. Neri Decl. at ¶ 14. Also, even though trial was expected to commence this year, such a trial would entail a significant investment of time and resources. Even if the trial resulted in a verdict for Plaintiff, likely post-trial motions and appellate practice would lead to delays and, at worst, a recovery that is less than the Settlement or possibly no recovery at all. *See, e.g., MicroStrategy,* 148 F. Supp. 2d at 667 ("there is little doubt that a jury verdict for either side would only have ushered in a new round of litigation in the Fourth Circuit and beyond, thus extending the duration of the case and significantly delaying any relief for plaintiffs.").

### 3.   The Solvency of CPA

There have been no representations as to any lack of solvency. However, that factor is entitled to little or no weight. *See Henley v. FMC Corp.*, 207 F. Supp. 2d 489, 494 (S.D. W. Va. 2002) ("[That factor] is largely beside the point given the other factors weighing in favor of a

negotiated resolution.").

### 4. The Reaction of the Class

It is premature to consider the reaction of the class since notice has not been distributed.

### C. The Court Should Approve the Proposed Form of Notice and Plan for Providing Notice to the Settlement Class

The threshold requirement concerning class notice is whether the means employed to distribute the notice was reasonably calculated to apprise the class of the pendency of the action, the proposed settlement, and the class members' rights to opt out or object. *See Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 173 (1974). The notice should describe the settlement and Class Members' ability to seek exclusion "clearly and concisely . . . in plain, easily understood language. . . ." *In re LandAmerica 1031 Exch. Servs., Inc. Internal Revenue Service § 1031 Tax Deferred Exch. Litig.,* No. 09-00415, 2012 U.S. Dist. LEXIS 97933, at *24-25 (D.S.C. Jul. 12, 2012). The proposed Notice more than satisfies these requirements.

Plaintiff has submitted a proposed form of notice (attached as <u>Exhibit 1</u> to the Settlement Agreement (the "Class Notice") that comports with guidelines of the Federal Judicial Center (*see* Official Website of the Federal Judicial Center, Class Action Notices Page, The Federal Judicial Center's "Illustrative" Forms of Class Action Notice, *available at* www.fjc.gov (last visited on March 12, 2017)) and satisfies due process. The notice will be individualized to each class member and will give each of them an estimate of what they will receive from the settlement if it is approved. CPA Global has records for all the class members, so notice can be sent by direct mail.

The Class Notice, which is written in simple language, includes: (1) basic information about the lawsuit; (2) an individualized description of the benefits provided by the Settlement; (3) an explanation of how Class Members can obtain Settlement benefits; (4) an explanation of how Class Members can exercise their right to opt-out or object to the Settlement; (5) an explanation

of the release; (6) the names of counsel for the Class and information regarding attorneys' fees, expenses and service awards; (7) the date and location of the fairness hearing date; (8) an explanation on how to appear at the fairness hearing; and (9) the Settlement Website and a toll-free number where additional information can be obtained.  As such, the Class Notice satisfies content requirements of Rule 23.

Additionally, the proposed dissemination of the Class Notice satisfies the requirements of due process.  The mechanics of the notice process are left to the discretion of the Court.  *See Beaulieu v. EQ Indus. Servs.*, No. 06-400, 2009 U.S. Dist. LEXIS 133023, at \*80-81 (E.D.N.C. Apr. 20, 2009) (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 122 (8th Cir. 1975)). Here, where the Parties have the contact information for the class members, notice can be by direct mail.  *See Eisen*, 417 U.S. at 173 (finding notice program to be "best notice practicable under the circumstances" where it includes "individual notice to all members who can be identified through reasonable effort."); *Leitz v. Kraft Foods Grp., Inc.*, No. 3:15-CV-262-HEH, 2016 U.S. Dist. LEXIS 35623, at \*6 (E.D. Va. Mar. 10, 2016) (finding that notice by U.S. mail to the class was "the best notice practicable under the circumstances and in full compliance with Rule 23 of the Federal Rules of Civil Procedure, the requirements of due process and applicable law").

Accordingly, the Court should approve the Class Notice and authorize its mailing.

**D.      The Class Should Be Preliminarily Certified and Counsel Should Be Appointed Class Counsel**

Courts apply Rule 23 liberally and flexibly to promote judicial economy and the ends of justice. *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 424 (4th Cir. 2003); *Morris v. Wachovia Sec., Inc.*, 223 F.R.D. 284, 291 (E.D. Va. 2004).

The proposed settlement class is defined as: "all former and current CPA Global patent holder clients located in the United States that: (i) were introduced to CPA Global by an introducer

agent; (ii) within any calendar year in the Class Period had 20 or fewer foreign (non-U.S.) patent renewals performed by CPA Global; and (iii) did not, within any calendar year in the Class Period, have more than 40 foreign patent renewals performed by CPA Global."

Here, Plaintiff contends that all Rule 23(a) prerequisites for class certification are met. Plaintiff acknowledges that CPA Global does not concede that this or any class could properly be certified in litigation.  Thus, Plaintiff contends as follows:

### 1.  Numerosity

Numerosity is easily satisfied because there are over 2,500 members of the proposed class. (Neri Decl. at ¶ 2.)  *See, e.g.*, *Gunnells v. Healthplan Servs., Inc.*, 348 F.3d 417, 425 (4th Cir. 2003) (finding that a class of 1,400 members "easily satisfied Rule 23(a)(1)'s numerosity requirement").

### 2.  Commonality

Rule 23(a)(2)'s commonality prong requires only that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  "A proposed class will satisfy the . . . commonality requirement if there is at least one question of law or fact common to the class." *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 211 (E.D. Va. 2003).  Even "differences in the underlying facts of individual class members' cases do not defeat a showing of commonality where there are common questions of law." *DiFelice v. U.S. Airways, Inc.*, 235 F.R.D. 70, 78 (E.D. Va. 2006) (Ellis, J.) (quoting *Hewlett v. Premier Salons Int'l, Inc.*, 185 F.R.D. 211, 216 (D. Md. 1997)).  And, "the fact that there are some factual variances in individual grievances among class members does not defeat commonality."  *Morris*, 223 F.R.D. at 292 (citations omitted).

In this case, the common questions include:

1.    Whether the country and foreign exchange charges applied by CPA Global breached its contracts with class members;

2.    Whether CPA Global made misrepresentations to the public on its website

or in advertising and marketing materials;

3.      Whether these alleged misrepresentations violated Virginia law;

4.      Plaintiff's entitlement to classwide damages; and

5.      Whether injunctive or declaratory relief concerning CPA Global's

invoices is appropriate.

All these issues focus exclusively on the conduct of CPA Global, and the answers to these questions would drive the resolution of the claims of all the class members.  Accordingly, commonality is satisfied.

### 3.   Typicality

"[T]o establish typicality [under Rule 23(a)(3)], the class representatives must show: (1) that their interests are squarely aligned with the interests of the class members; and, (2) that their claims arise from the same events or course of conduct and are premised on the same legal theories as the claims of the class members."  *Fisher*, 217 F.R.D. at 212 (citing *Jeffreys v. Commc'ns Workers of Am.*, 212 F.R.D. 320, 322 (E.D. Va. 2003)).  "[T]he typicality requirement is satisfied even when the plaintiffs' claims and the claims of the class members are not identical."  *Rodger v. Elec. Data Sys. Corp.*, 160 F.R.D. 532, 538 (E.D.N.C. 1995) (citing *Eisenberg v. Gagnon*, 766 F.2d 770, 787 (3d Cir. 1985)); *see also Chisolm v. TranSouth Fin. Corp.*, 184 F.R.D. 556, 563-64 (E.D. Va. 1999) ("Complete identity between the claims constituting each individual action is not required").

RTS has no conflicts or interests that diverge from the rest of the class.  RTS alleges it was overcharged by CPA for foreign patent renewals with respect to the country and foreign exchange charges.  RTS alleges this conduct breached its contract with CPA.   (Neri Decl. at ¶ 3.) Accordingly, RTS is a victim of the same alleged common course of wrongful conduct.  Therefore, the typicality requirement is satisfied.

### 4. Adequacy

The Rule 23(a)(4) adequacy requirement is met if "the class representative and class counsel fairly and adequately protect the interests of the class." *DiFelice*, 235 F.R.D. at 79. Adequacy is met if the class representative "has no conflicting claims with other class members and has a sufficient interest in the case's result," and class counsel are "qualified to conduct the litigation vigorously." *Talbott v. GC Servs., Ltd. Pshp.*, 191 F.R.D. 99, 105 (W.D. Va. 2000). Plaintiffs' interests fully aligned with those of the Class members and are without conflicts of interest.

Plaintiff has also retained qualified counsel.  Mr. Gonnelli of the Sultzer Law Group has successfully prosecuted hundreds of class actions and is a former partner of Faruqi & Faruqi LLP, a prominent plaintiffs' class action firm.  (Neri Decl. at ¶ 12.) Messrs. Brown and Neri are both former members of the law firm of Latham & Watkins, LLP, where Mr. Brown was a partner in the firm's securities class action defense group.   (*Id.*) The firm resumes of the three firms are attached as Exhibits B to D of the Neri Declaration.

### 5. The Requirements of Rule 23(b)(3)

In addition to the prerequisites of Rule 23(a), a case may proceed as a class action only if it also satisfies one of the three alternative requirements of Rule 23(b).  Here, the class satisfies Rule 23(b)(3) because the questions of law or fact common to Class members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy.

#### a. Predominance

"The Rule 23(b)(3) predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Amchem Prods. V. Windsor*, 521 U.S. 591, 623 (1997).  "Critically," this test "is qualitative rather than quantitative." *Stillmock v. Weis*

*Markets, Inc.*, 385 Fed. Appx. 267, 273 (4th Cir. 2010).  In determining whether the predominance standard is met, courts focus on the issue of liability, and "if the liability issue is common to the class, common questions are held to predominate over individual ones."  *In re BearingPoint, Inc. Sec. Litig.*, 232 F.R.D. 534, 542 (E.D. Va. 2006) (quoting *In re Kirschner Medical Corp. Sec. Litig.*, 139 F.R.D. 74, 80 (D. Md. 1991)) (Ellis, J.).

The predominance requirement is satisfied here because the essential factual and legal issues regarding the Settlement Class Members' claims relate to the conduct of CPA in accordance with alleged standardized practices.  *Talbott*, 191 F.R.D. at 105 ("Here, common questions predominate because of the standardized nature of [defendant's] conduct.").

CPA Global is alleged to have overcharged class members with respect to country charges and foreign exchange charges.  A determination of whether those facts are true or not predominates over any individual issues in this case.  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  The only significant individual issues relate to the amount of damages each class member is entitled to, which do not defeat predominance.  *In re BearingPoint*, 232 F.R.D. at 542 (noting that differences in damages among class members do not defeat a finding of predominance when liability is a common, class-wide issue).

Accordingly, predominance is satisfied.

### b.  Superiority

The superiority inquiry requires that a class action be "superior to other available methods for fairly and efficiently adjudicating the controversy."  Fed. R. Civ. P. 23(b)(3).  When determining whether a class action is superior, the Court should generally consider the following factors: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy

already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

With respect to (A), since the class has been narrowed to include only class members with relatively small damages, the interests of class members in controlling individual litigation is minimal.

With respect to (B), there is no other litigation involving the issues in this case of which the Parties are aware.

With respect to (C), the choice of the Eastern District of Virginia as a forum was determined by the forum selection clause in Plaintiff's contract which is also contained in the contracts of many class members, so this forum is the appropriate one for these claims.

With respect to (D), when class certification is sought for settlement purposes only, as it is here, the Court need not consider factor (D) because difficulties likely to be encountered in managing the case at trial are irrelevant in the settlement context, where "the proposal is that there be no trial." *Amchem*, 521 U.S. at 620.

### c.  Ascertainability

Though not expressly required by Rule 23(a), most courts, including the Fourth Circuit, also imply a requirement that a class be "readily identifiable," commonly known as "ascertainability." *Soutter v. Equifax Info. Servs., LLC*, 307 F.R.D. 183, 196 (E.D. Va. 2015).  The parties have the names and addresses of all the class members, so ascertainability is easily satisfied.

### 6.  Class Counsel Should Be Appointed to Represent the Settlement Class

Plaintiff also requests that its attorneys be appointed Class Counsel pursuant to rule 23(g)(1)(A).  Relevant criteria include: (1) "the work counsel has done in identifying or investigating potential claims in the action," (2) "counsel's experience in handling class actions,

other complex litigation, and claims of the type asserted in the action," (3) "counsel's knowledge of the applicable law," and (4) "the resources counsel will commit to representing the class." Rule 23(g)(1)(A)(i-iv).  Plaintiff's counsel satisfy each of these criteria.

First, Plaintiff's counsel reviewed numerous contracts and invoices from CPA Global clients, as well as from RTS, before filing the initial complaint.  This work continued throughout the litigation and is also reflected in the Virginia law claims in the amended complaint after the case was transferred to this Court.

Second, Plaintiff's counsel has considerable experience in handling class actions.  *See* Neri Decl. ¶¶ 11-12 and Exs. "A"-"C" and discussion at Section 3(A)(4), *supra*.

Third, counsel's knowledge of the applicable law is reflected in their experience and the work they have done in this case.  Accordingly, the Court may assess this factor from its observation of Plaintiff's counsel's work.

Fourth, Plaintiff's counsel has committed all necessary resources to litigate this case.  They have forwarded all expenses, including for U.K. counsel and a highly qualified and reputable data expert.  Plaintiff's counsel was also fully prepared to litigate discovery issues overseas and retain experts for class certification and merits issues.

Accordingly, Plaintiff's Counsel should be appointed Class Counsel.

**E.**     **KCC Should Be Appointed Notice and Settlement Administrator**

The Parties have consulted and propose that KCC (Kurtzman Carson Consultants), a nationally recognized class action notice and claims administrator, be appointed to administer the notice process.   KCC is a leading class action administrator that provides comprehensive class action services, including legal notification, email and postal mailing campaign implementation. It has been recognized as the best claims administrator by The New York Law Journal, as well as the ALM National Law Journal, and has experience administering over 1,500 settlements.  *See*

Official Website of KCC, *available at* http://www.kccllc.com/class-action/what-we-do (last visited March 12, 2107).   Based on its substantial experience, KCC is clearly capable of competently and efficiently handling notice and administration of this class action settlement, if it is preliminarily and finally approved.

### F.   Proposed Schedule of Events

If the Court grants the relief requested in this motion, Plaintiff proposes the following schedule:

      a.   Mailing of Notice (within 30 days after entry of the Preliminary Approval Order)

      b.   Deadline to Opt Out or Object (45 days after notice mailing)

      c.   Deadline to Submit Motion for Final Approval/Award of Fees and Responses to Objections (65 days after notice mailing)

      d.   Date of Fairness Hearing (14 days after submission of Motion for Final Approval/Award of Fees and Responses to Objections, but no earlier than 100 days after entry of the Preliminary Approval Order, or such other time as the Court shall set)

## IV.   CONCLUSION

Plaintiff respectfully requests that the Court grant the Motion in its entirety, and issue the proposed Preliminary Approval Order, attached as Exhibit 2 to the Settlement Agreement.

Respectfully submitted,

Dated: March 13, 2017

**BROWN NERI SMITH & KHAN, LLP**

             /s/
Geoffrey A. Neri, Esq. (VSB No. 72219)
Ethan J. Brown, Esq. (admitted *pro hac vice*)
11766 Wilshire Blvd., Ste. 1670
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
geoff@bnsklaw.com
ethan@bnsklaw.com

Adam R. Gonnelli, Esq. (admitted *pro hac vice*)
The Sultzer Law Group
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Phone: (845) 483-7100
Fax: (888) 749-7747
gonnellia@thesultzerlawgroup.com

Innessa S. Melamed, Esq. (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile: (212) 983-9331
Email:  imelamed@faruqilaw.com

*Counsel for Plaintiff Run Them Sweet, LLC and
the Proposed Class*

## CERTIFICATE OF SERVICE

I hereby certify that on March 13, 2017, I will electronically file the foregoing with the

Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to

the following:

Demme Doufekias
Morrison & Foerster LLP (DC)
200 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
ddoufekias@mofo.com

Penelope Athene Preovolos
Grant C. Schrader
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94015-2482
ppreovolos@mofo.com
gschrader@mofo.com

                                        /s/
                                Geoffrey A. Neri, Esq.
                                VSB No. 72219
                                Brown Neri Smith & Khan, LLP
                                11766 Wilshire Blvd., Ste. 1670
                                Los Angeles, CA 90025
                                Phone: (310) 593-9890
                                Fax: (310) 593-9980
                                Email: geoff@bnsklaw.com

                                *Counsel for Plaintiff Run Them Sweet, LLC*
                                *and the Proposed Class*