# IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF VIRGINIA
## ALEXANDRIA DIVISION

RUN THEM SWEET, LLC, on behalf of
itself and those similarly situated,
                          Plaintiff,

     v.

CPA GLOBAL LIMITED and CPA
GLOBAL NORTH AMERICA LLC,
                          Defendants.

Case No. 1:16-cv-01347-TSE-TCB


## PLAINTIFF RUN THEM SWEET LLC'S SUPPLEMENTAL BRIEFING IN FURTHER SUPPORT OF MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT

**TABLE OF CONTENTS**

I.    **INTRODUCTION**..........................................................................................1

II.   **THE COMMON PROVISIONS IN THE CONTRACTS OF THE CLASS MEMBERS**................................................................................1

     A.  **"Official Fees" and Currency Conversion Provisions**...................................2

     B.  **"Country Charges"**........................................................................2

III.  **DIFFERENCES IN CHOICE OF LAW PROVISIONS AMONG CLASS MEMBER CONTRACTS AND EFFECT ON CLASS CERTIFIABILITY**............3

IV.  **THE CLASS DEFINITION**.......................................................................7

     A.  **Introducer Agents**..........................................................................7

     B.  **Twenty or Fewer Patent Renewals in a Calendar Year**...................................7

     C.  **No More Than Forty Renewals in a Year**.................................................8

V.    **THE GUIDANCE OF *BROUSSARD* AND *GRAY***......................................11

VI.  **THE BREADTH OF THE PROPOSED CLASS RELEASE**.................................11

VII.  **THE DAMAGES OF EACH CLASS MEMBER**......................................13

VIII.  **CERTIFIABILITY OF THE FRAUD CLAIM**..........................................13

IX.  **CONCLUSION**..................................................................................16

# TABLE OF AUTHORITIES

## CASES

*Am. Airlines, Inc. v. Wolens*, 513 U.S. 219 (1995) ............................................................4

*Amchem Products v. Windsor*, 521 U.S. 591 (1997) ......................................................6, 11

*Berry v. Schulman*, 807 F.3d 600 (4th Cir. 2015) ......................................................11, 13

*Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331 (4th Cir. 1998)............................ 9-11

*Brown v. Transurban USA, Inc.*, 318 F.R.D. 560 (Sept. 29, 2016) ......................................12

*Filak v. George*, 267 Va. 612 (2004) ......................................................................4

*Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201 (E.D. Va. 2003) .....................................10

*Gariety v. Grant Thornton, LLP*, 368 F.3d 356 (4th Cir. 2004) ...................................n.1, 6

*Gray v. Hearst Communs., Inc.*, 444 F. App'x 698 (4th Cir. 2011) ......................................9

*Gunnells v. Healthplan Servs.*, 348 F.3d 417 (4th Cir. 2003)...........................................6

*In re Digitek Prods. Liab. Litig.*, No. 2:08-md-01968,
   2010 U.S. Dist. LEXIS 53610 (S.D.W.V. May 25, 2010)..............................................6

*In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242 (2d Cir. 2011)...........11

*In re Mi Windows & Doors Prods. Liab. Litig.*, No. 2:12-mn-00001-DCN,
   2015 U.S. Dist. LEXIS 184471 (D.S.C. July 22, 2015) ............................................4

*In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 654 (E.D. Va. 2001) .............................12

*In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132 (2d Cir. 1998) ..................................11

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108 (2d Cir. 2013) .............................13

*In re WorldCom, Inc. Sec. Litig.,* 388 F. Supp. 2d 319 (S.D.N.Y. 2005) ..........................n.2, 12

*JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802 (N. Y. App. Div. 2010)................5

*Klay v. Humana, Inc.*, 382 F.3d 1241 (11th Cir. 2004) .............................................4, 13

*Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367 (1996)....................................11

*Reed v. Big Water Resort, LLC*, No. 2:14-cv-01582-DCN,
   2016 U.S. Dist. LEXIS 11227 (D.S.C. Feb. 1, 2016) ..............................................11

*RTS Flexible Systems Limited v. Molkerei Alois Müller Gmbh & Co. KG*, [2010] UKSC 14 .....5

*Snell v. Thacker*, [2006] JCA 164 (Jersey Ct. of App.)……………………………………… 5

*Stanton v. Mourant de Feu*, [1994] JLR 82 (Jersey Royal Ct.)……………………………… 5, 6

*Sullivan v. DB Invs., Inc.*, 667 F.3d 273 (3d Cir. 2011)...............................................6

*Taft v. Ackermans,* 2007 U.S. Dist. LEXIS 9144 (S.D.N.Y. Jan. 31, 2007).......................n.2, 12

*Truesdale v. Nationwide Affinity Ins. Co. of Am.*,
   No. 1:11 cv 467, 2013 WL 12136588 (M.D.N.C. Apr. 4, 2013)..................................12

*Tsintolas Realty Co. v. Mendez*, 984 A.2d 181 (D.C. Ct. App., 2009) .........................................5

*Viega v. Suntrust Bank*, No. 1:09-cv-02815-PWG,
    2011 WL 9362390, (D. Md. Feb. 23, 2011) ..................................................................12

*VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606 (DE. Sup. Ct. 2003).......................5

## OTHER AUTHORITIES

1 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS
    §§ 1.5-1.7 (3d ed. 2004).................................................................................................5

22 HALSBURY'S LAWS OF ENGLAND, CONTRACTS……………………………………………..6

# I.      <u>INTRODUCTION</u>

The parties appreciate the time and opportunity afforded to address in writing the questions the Court raised in our May 3, 2017 conference call.

As a threshold matter, undersigned counsel respectfully submits that there are two facts that should inform the class certification analysis at this stage and in the specific context of a motion for preliminary approval of class action settlement.

First, the proposed settlement deliberately only includes a portion of the class described in the amended complaint. Rather than "All persons or entities in the United States who entered into a Renewal Service Agreement using Defendants' standard agreements," the settlement class only consists of Defendants' smaller customers whose relevant contractual provisions are nearly identical and/or uniform. The parties have supplemented the record with samples of contracts for the Court's review.[1] *See* Declaration of Sally Jo Russell In Support of Defendants CPA Global Limited and CPA Global North America LLC's Memorandum In Support of Preliminary Approval of Class Action Settlement ("Russell Decl.") Exs. "A"-"I". The parties and the mediator took great care to define a settlement class that, in the parties' and mediator's estimation, clearly shared common questions of fact and law with minimal individualized issues and none that would preclude certification of a settlement class.

Second, and to that end, it should be emphasized that Plaintiff is moving for certification of a settlement class, not a litigation class. While the Court must carefully examine the settlement to ensure that Plaintiff is not trying to wedge "a square peg in a round hole" (05.13.17 Hearing Transcript ("Tr.") at 26: 1-2), as the Court is equally aware, the analysis for a settlement class

---

[1] If, for any reason, however, the Court concludes the record is still insufficient, Plaintiffs would propose that additional contracts be ordered to be submitted under seal for review, subject to the protective order already in place in this case.

differs from the analysis for a litigation class.  As discussed further below, there are factors that are given great weight when certifying a litigation class, such as differences in applicable law, that case law indicates are largely irrelevant in the settlement context.

## II.     THE COMMON PROVISIONS IN THE CONTRACTS OF THE CLASS MEMBERS

Plaintiff's breach of contract claim should be certified for settlement purposes.  While a larger class was identified in the complaint, the parties narrowed the class definition to ensure that it was certifiable for settlement purposes.  This class was defined the way it was in part because the contracts the proposed class members executed were not separately negotiated with Defendants and had identical, or materially identical, provisions with respect to the "official fees" and "country charges" provisions, along with a currency conversion provision described by Defendants as a "fund management" provision.  These are the provisions Plaintiff alleged and still maintains are the "culprits", so to speak, in Defendants' alleged overbilling practices.

### A.     "Official Fees" and Currency Conversion Provisions

Plaintiff has alleged and maintains that Defendants overcharged class members for "official fees" and "country charges" through the process of currency conversion, and associated charges, which Defendants have described as "funds management."  Specifically, each of the contracts of the class members contain an "official fee" provision, which states "[i]n addition to our fees there will also be payable by you the charges made by the relevant registries ["Official Fees"] in each jurisdiction and which vary from time to time . . . ."  With respect to currency conversion, each contract also contains a materially identical provision that states "[a]ny sums of money that may at any time require to be converted from one currency into the currency in which we have agreed to invoice you will be so converted at our rates from time to time."  The parties have submitted a

representative sample of the contracts of class members with this filing that contain materially identical provisions. (Russell Decl. ¶¶ 9-17; Exs. "A"-"I".)

The reasonableness and propriety of the foreign currency conversion rates and related funds management costs charged to clients by Defendants and by extension the reasonableness and propriety of the "Official Fees" and "Country Charge" is one of the primary common issues in the case. Resolving this issue would resolve the one of the most significant claims of all class members at once. If the case were to proceed to litigation, Plaintiff would show that Defendants' foreign currency exchange rates ("our rates") and associated funds management costs were not reasonable or proper by comparing them to widely used market exchange rates.

### B. "Country Charges"

Plaintiff has also alleged that Defendants overcharged class members on the "Country Charge" component of the contracts, separate and apart from the currency exchange issues discussed above. The Country Charge provisions in the contracts of the class members are all worded similarly to the following:

> In addition to our fees there will be also be payable by you the charges made by the relevant registries ("Official Fees") in each jurisdiction and which vary from time to time and, where applicable "Country Charge" [sic] which is set out in a tariff (which may vary from time to time), a current copy of which is available on request.

While some contracts contain different language preceding the country charge language, the country charge clause is identical:

> Our basic fees in relation to Services … will usually comprise at least two components: (a) a fee (the "Administration Charge") which may be expressed as a periodic portfolio management fee or a fee for each renewal transaction…. (b) a "Country Charge" which is set out in a tariff, a current copy of which is available on request.

(*See* Russel Decl., Exs. "A" – "I".)

These two materially similar versions of the contracts are representative of all settlement class member contracts.  (Russell Decl. ¶¶ 9-17; Exs. "A"-"I".)

This is another of the primary common issues in the case.  If the case were to proceed, Plaintiff would show that the country charges should have been, by the terms of the contracts, limited to external pass-through costs for local agents that Defendants were actually obliged to pay.  Determining whether the contracts should be read that way, and whether Defendants exceeded those charges and breached the contracts by including country charges when a lower amount of external costs were incurred or not incurred at all would resolve Plaintiff's claim concerning the country charges.

Since a determination of whether Defendants' common conduct was permissible under the language of the contracts (which was substantially similar across the class members' contracts) would largely resolve the litigation, the Court should certify Plaintiff's breach of contract claims for settlement purposes.

## III.  DIFFERENCES IN CHOICE OF LAW PROVISIONS AMONG CLASS MEMBER CONTRACTS

The Court also requested additional briefing on whether differences in choice of law provisions among the contracts would impact the Rule 23 analysis.  (Tr. 15:23-16:1.)  The contracts with the settlement class members have several different choice of law provisions: approximately 1,800 are governed by the law of the Isle of Jersey, approximately 800 are governed by English law, approximately 400 are governed by Virginia law, approximately 50 are governed by New York law, and a handful are governed by the law of Delaware and Washington D.C.  (Russell Decl. at ¶ 8.)  The parties have submitted contracts that are representative of settlement class's contracts.  (Russell Decl. ¶¶ 9-17; Exs. "A"-"I".)  However, these different provisions are not an obstacle to class certification for two reasons: first, the differences among the laws in question are not

material; and second, such differences largely relate to the manageability factor under Rule 23, which is not relevant in the settlement context.

The Supreme Court has noted that contract law is substantially similar amongst the fifty states and whatever slight variations may exist are neither material nor outcome-determinative. *See Am. Airlines, Inc. v. Wolens*, 513 U.S. 219, 233 n.8 (1995) ("[C]ontract law is not at its core diverse, nonuniform, and confusing."). The key legal issue in any breach-of-contract action is the actual breach, which does not vary between states or even between the states and foreign jurisdictions. "A breach is a breach is a breach, whether you are on the sunny shores of California or enjoying a sweet autumn breeze in New Jersey." *In re Mi Windows & Doors Prods. Liab. Litig.*, No. 2:12-mn-00001-DCN, 2015 U.S. Dist. LEXIS 184471, at *18 (D.S.C. July 22, 2015) (approving settlement class), quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1263 (11th Cir. 2004).

Contract law also does not significantly change when one crosses the Atlantic Ocean into England or the Isle of Jersey. As to English law, this is unsurprising given that U.S. contract law was derived from English common law principles. *See generally* 1 E. ALLAN FARNSWORTH, FARNSWORTH ON CONTRACTS §§ 1.5-1.7 (3d ed. 2004) (describing the development of American contract law from its English common law roots). As to Jersey law, courts in the Isle of Jersey (which is a Crown dependency of the United Kingdom) look to English law to inform their analysis on contract issues. *See, e.g. Snell v. Thacker*, [2006] JCA 164, at ¶ 53 (Jersey Ct. of App.) (citing and applying "principles enunciated in the decision of the English Court of Appeal"). Accordingly, as in the United States, the key inquiry for a breach of contract claim, in either the Isle of Jersey or England, is whether one or more parties to the agreement breached their contractual obligations. *See, e.g. Stanton v. Mourant de Feu,* [1994] JLR 82, 83 (Jersey Royal Ct.) (applying Jersey law and determining the scope of the contractual obligation and whether it had

been breached); *RTS Flexible Systems Limited v. Molkerei Alois Müller Gmbh & Co. KG*, [2010] UKSC 14 (appeal taken from Eng.) (UK) (applying English law and determining the scope of the contractual obligation and whether it had been breached).

Accordingly, the elements of a breach of contract claim do not vary materially among the jurisdictions:

**Virginia**: "The elements of a breach of contract action are (1) a legally enforceable obligation of a defendant to a plaintiff; (2) the defendant's violation or breach of that obligation; and (3) injury or damage to the plaintiff caused by the breach of obligation." *Filak v. George*, 267 Va. 612, 619 (2004).

**New York**: "[T]he essential elements of a cause of action to recover damages for breach of contract" are "[1.] the existence of a contract, [2.] the plaintiff's performance under the contract, [3.] the defendant's breach of that contract, and [4.] resulting damages. *JP Morgan Chase v. J.H. Elec. of N.Y., Inc.*, 69 A.D.3d 802, 803 (App. Div. 2010)

**Delaware**: To establish a breach of contract, "the plaintiff must demonstrate: first, the existence of the contract, whether express or implied; second, the breach of an obligation imposed by that contract; and third, the resultant damage to the plaintiff." *VLIW Tech., L.L.C. v. Hewlett-Packard Co.*, 840 A.2d 606, 612 (Del. 2003).

**Washington, D.C.**: "To prevail on a claim of breach of contract, a party must establish (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by breach." *Tsintolas Realty Co. v. Mendez*, 984 A.2d 181, 187 (D.C. Ct. App., 2009).

**Isle of Jersey:** Courts in the Isle of Jersey likewise first analyze whether there was a valid contract, the scope of the contract, if it was breached, and if there are any damages caused by the

breach. *See Stanton*, [1994] JL4 at 93-100. As in the United States, in order to state a claim for damages, the harm must arise "from such breach of contract itself" and causation cannot be "too remote." *Id.* (citing *Hadley v. Baxendale*, [1854] 156 Eng. Rep. 145 (UK)).

**England:** "When one party fails to perform an obligation under the contract and such failure amounts to a breach, the innocent party has a right to damages." 22 HALSBURY'S LAWS OF ENGLAND, CONTRACTS § 553; *see also* § 575 (citing *Robinson v. Harman*, [1848] 1 Exch. Rep. 850, 855 (UK) ("The rule of the common law is, that where a party sustains a loss by reason of a breach of contract, he is, so far as money can do it, to be placed in the same situation, with respect to damages, as if the contract had been performed.")).

Second, certification is sought here for settlement purposes, not for trial. And "concerns regarding variations in state law largely dissipate when a court is considering the certification of a settlement class." *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011). As explained by the Third Circuit in *Sullivan*, variations in the applicable laws do not defeat the commonality and predominance requirements in the settlement context because the state-law distinctions impact trial manageability, which is irrelevant in the settlement context. *Id.* at 302-03. The Fourth Circuit has noted that in the context of a proposed class settlement, "a district court need not inquire whether the case, if tried, would present intractable management problems." *Gunnells v. Healthplan Servs.*, 348 F.3d 417, 440 (4th Cir. 2003) (quoting *Amchem Products v. Windsor*, 521 U.S. 591, 620 (1997); *see also In re Digitek Prods. Liab. Litig.*, No. 2:08-md-01968, 2010 U.S. Dist. LEXIS 53610, at *169 n.14 (S.D.W.V. May 25, 2010) (denying class certification without prejudice to a

settlement class because, among other things, "the choice-of-law problem virtually disappears[.]")[2]

Here, similarly, the parties are requesting settlement-only class certification and so that the manageability problems that otherwise might be presented by the variations in choice of law clauses should not create any obstacle to class certification.

## IV.    THE CLASS DEFINITION

The proposed Settlement Class is defined as the 3,150 CPA customers[3] who are:

> former and current CPA Global patent holder clients located in the United States that: (i) were introduced to CPA Global by an introducer agent; (ii) within any calendar year in the Class Period had 20 or fewer foreign (non-U.S.) patent renewals performed by CPA Global; and (iii) did not, within any calendar year in the Class Period, have more than 40 foreign patent renewals performed by CPA Global.

Settlement Agreement at 1.24.

The Court requested the rationale for the class definition. (Tr. 9:12 -10:2). Essentially, the class was defined as it was because this is the definition that matches the group of CPA clients who had common contractual provisions and whose contracts Plaintiff alleges were breached by CPA's common conduct. It also limits the class to smaller class members for whom an individual lawsuit is not an effective option.

The elements of the class definition are addressed in turn.

---

[2] In *Gariety v. Grant Thornton, LLP*, 368 F.3d 356, 370 (4th Cir. 2004) the Court of Appeals remanded the case for further proceedings on class certification where the plaintiffs had not identified nor compared the state laws applicable to the claims of the class. Here, plaintiff has done both. In addition, *Gariety* involved a litigation class, where the district court would be faced with trying the state law claims. Here, in the settlement context, no such concern exists.

[3] The exact number of class members may change depending on vetting from the settlement administrator.

### A. Introducer Agents

The settlement class was limited to Defendants' clients who contracted with CPA through an "introducer agent" (a law firm or patent attorney/agent) because CPA did not negotiate contractual provisions with these clients. These clients signed contracts based on a standard template with minimal variation. In contrast, clients who came directly to CPA Global and not through an introducer agent had the ability to, and often did, negotiate contract terms with CPA.

### B. Twenty or Fewer Patent Renewals in a Calendar Year

This factor limits the class to CPA clients with relatively small portfolios. Because CPA's alleged overcharging was based on the number of foreign patent renewals, clients with relatively few patent renewals individually did not suffer large damages. The amount of damages makes it impractical for these smaller clients to individually sue CPA.

The number of patent renewals was not selected arbitrarily. Generally, larger clients had the ability to negotiate contract terms, while smaller clients did not. In addition, unlike these smaller clients, clients with more than 20 annual foreign renewals typically had in-depth knowledge about the various costs involved with renewing patents. These companies often had internal personnel (in-house counsel or patent administrators) responsible for management of their patent portfolio.

Settlement class members will not be releasing claims for years in which they have more than 20 foreign patent renewals. "[T]his release shall not extend to any year in the Class Period in which a Settlement Class Member had more than 20 foreign patent renewals and for which the Settlement Class Member is not receiving payment under this Settlement." Settlement Agreement at 8.

### C. No More Than Forty Renewals in a Year

The number of annual patent renewals may vary significantly for clients, as patents are abandoned or new patents are issued or otherwise acquired, for example through the acquisition of another company. It is possible that large clients may have a year with 20 or fewer patent renewals, but that in other years they have more than 40 renewals in a year. This component of the definition is thus intended to exclude larger clients with greater negotiating ability, and greater in-house sophistication from the settlement class. Clients with more than 40 annual renewals in a year are not part of the settlement class and are not releasing any claims.

## V. THE GUIDANCE OF *BROUSSARD* AND *GRAY*

In *Broussard v. Meineke Disc. Muffler Shops*, 155 F.3d 331, 340 (4th Cir. 1998), the Fourth Circuit Court of Appeals overturned the certification of a class of franchisees with materially different contracts because it raised "the distinct possibility that there was a breach of contract with some class members, but not with other class members." However, the contracts in *Broussard* contained "*materially* different contract language . . ." and a number of contracts raised "a *wholly distinct* set of interpretive issues." *Id.* (emphasis added). Moreover, there were substantial intraclass conflicts between class members who wished to terminate their franchise agreements and those who desired to continue with their franchise businesses.

Neither of these obstacles to class certification is present here. In defining the class at issue here, the parties were careful to ensure that the settlement class members in this case all had contracts with the same material provisions that did not raise any "distinctive sets of interpretive issues." Accordingly, the factual and legal conclusions drawn from an analysis of any one of the contracts at issue will apply to the class as a whole.

The *Broussard* Court was also careful to note that trial courts have broad discretion in deciding whether to certify a class and that the commonality and typicality requirements of Rule

23 do not "require that members of the class have identical factual and legal claims in all respects." *Id*. at 344.

The Fourth Circuit's opinion in *Gray v. Hearst Communs., Inc.*, 444 F. App'x 698, 702 (4th Cir. 2011) provides a useful example of the application of the commonality factor in a breach of contract case. In *Gray*, the Fourth Circuit affirmed the district court's grant of class certification of breach of contract, implied covenant of good faith and fair dealing, and unfair and deceptive trade practices claims. The plaintiff businesses claimed that the defendant misrepresented the extent of its publication's distribution. Despite significant differences in sales pitches, written offers, and representations concerning distribution, the court held that the existence of a uniform distribution term in the contracts predominated over individual issues and upheld class certification.

Similarly, Defendants' contracts have uniform contractual provisions and obligations. It is obliged to pass along the external costs of local agents (the "country charge") actually incurred and not to use highly and unreasonably inflated exchange rates in calculating official fees. These obligations are uniform across the defined class and predominate over individual issues. In addition to *Gray*, where similar contractual provisions exist in disputes about overbilling or underpayment, courts have found that class issues predominate. For example, in *Fisher v. Va. Elec. & Power Co.*, 217 F.R.D. 201, 224 (E.D. Va. 2003), the fact that thousands of easements contained different provisions did not predominate where the defendant violated common provisions in a similar manner. Here, the fact that the contracts of *CPA's* clients may differ in some *non*-material respects does not change the fact that all class members were overcharged.

In this case, like in *Gray*, and unlike in *Broussard*, a determination of whether CPA breached its common contractual provisions "will resolve in one stroke an issue that is central to the validity of the class members' breach of contract claims." *Gray*, 444 F. App'x at 702.

In addition, there is no intraclass conflict. All class members have the same interest in recovering the alleged overcharges from CPA and the proposed distribution of settlement funds does not favor any members of the settlement class at the expense of any other. Thus, a determination of whether CPA breached these provisions would resolve an issue that is central to the breach of contract claim of the class. The *Broussard* Court noted that the class certified by the district court contained three distinct categories of franchisees. Broussard 155 F.3d at 337. "A hodgepodge of factually as well as legally different plaintiffs." *Id*. at 343 (quoting *Georgine v. Amchem Products, Inc.*, 83 F.3d 610, 632 (3d Cir. 1996)). Here, the universe of potential class members described in the complaint was intentionally narrowed by the parties for settlement purposes in a manner that ensured that no conflicts existed.

## VI.    THE BREADTH OF THE PROPOSED CLASS RELEASE

With respect to the Court's concern about the breadth of the proposed release and the types of claims that can be included in the release (Tr. 16:2-24), the Fourth Circuit recently stated that "[i]n class action settlements, parties may release not only the very claims raised in their cases, but also claims arising out of the 'identical factual predicate.'" *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015) (citing *In re Literary Works in Elec. Databases Copyright Litig.*, 654 F.3d 242, 248 (2d Cir. 2011)). As the Fourth Circuit has recognized, "the release of claims that form the basis of the litigation is the raison d'être of any settlement[.]" *Berry*, 807 F.3d at 616. If plaintiffs were only able to release claims that were deemed to be certifiable, defendants would never settle cases unless every claim was appropriate for certification. *See id.* This would severely limit the

availability of the settlement device, and "[t]here is a strong judicial policy in favor of settlements, particularly in the class action context." *Reed v. Big Water Resort, LLC*, No. 2:14-cv-01582-DCN, 2016 U.S. Dist. LEXIS 11227, at *9 (D.S.C. Feb. 1, 2016) (quoting *In re PaineWebber Ltd. P'ships Litig.*, 147 F.3d 132, 138 (2d Cir. 1998)).

Indeed, the U.S. Supreme Court has held that a class action can even release claims that could not have been brought in the litigation so long as they arise from the same set of facts. In *Matsushita Elec. Indus. Co. v. Epstein*, 516 U.S. 367, 369 (1996) the Supreme Court overturned a decision of the Ninth Circuit and held that a state court class action could release exclusively federal claims where they arose out of the same set of operative facts.

As such, courts in the Fourth Circuit routinely approve settlements that release all claims that were brought or could have been brought in the action regardless of whether all the claims could have been certified. *See, e.g. In re MicroStrategy, Inc. Sec. Litig.*, 148 F. Supp. 2d 654, 661 (E.D. Va. 2001) (approving class settlement that released *any claim* "arising out of, based upon or related to any of the allegations in the complaint" without conducting a certification analysis of all claims) (Ellis, J.); *see also Brown v. Transurban USA, Inc.*, 318 F.R.D. 560 (E.D. Va. 2016) (approving broad release of all claims without a claim by claim analysis on certification); *Truesdale v. Nationwide Affinity Ins. Co. of Am.*, No. 1:11 cv 467, 2013 WL 12136588 (M.D.N.C. Apr. 4, 2013) (approving broad release of all claims in class settlement for breach of contract class); *Viega v. Suntrust Bank*, No. 1:09-cv-02815-PWG, 2011 WL 9362390, (D. Md. Feb. 23, 2011) (approving broad release of any claims that were asserted or could have been asserted).[4]

---

[4] That some of the claims may arise under foreign law does not affect the analysis or preclude their release. *See Taft v. Ackermans,* 2007 U.S. Dist. LEXIS 9144, at *26 (S.D.N.Y. Jan. 31, 2007) ("That the release is not limited to claims brought under the laws of the United States of America or brought in American forums does not inform the Court's analysis."); *In re WorldCom, Inc. Sec.*

The proposed release in this case includes claims based on different legal theories such as consumer, common law fraud, unjust enrichment and breach of contract, because all these potential claims arise out of the "identical factual predicate" – the alleged practiced of overbilling based on unreasonable foreign exchange rates and undisclosed foreign fees that could have been brought in the case. *See* First Am. Compl., 3-9 (for factual background), 9-13 (for class allegations).

Accordingly, the proposed release in this case is not overbroad and should be approved.

## VII.  THE DAMAGES OF EACH CLASS MEMBER

The Court also noted the challenges of formulating an appropriate plan of allocation if the settlement is approved.  (Tr. 10:3-6).  Should the Court grant preliminary approval, Plaintiff and the claims administrator will calculate each class member's share of the settlement and list it in the individualized settlement notice so the class will know exactly what they are accepting or rejecting.  Settlement Agreement at 12.

A "plan of allocation must also meet the standards of fairness, reasonableness, and adequacy." *In re Mills Corp. Sec. Litig.*, 265 F.R.D. 246, 258 (E.D. Va. 2009).  The opinion of qualified counsel "is entitled to significant respect" and the proposed allocation "need not meet standards of scientific precision, and given that qualified counsel endorses the proposed allocation, the allocation need only have a reasonable and rational basis." *Id.*

Here, the total amount of the settlement was based on the Parties' negotiations working from the actual fees collected by CPA from the Class Members that were in excess of actual payments CPA made to foreign registrars and agents (including the costs of currency conversion). The amount each class member will receive if the settlement is approved will be its pro rata share

---

*Litig.,* 388 F. Supp. 2d 319, 333, 341-44 (S.D.N.Y. 2005) (approving release of claims arising under foreign law).

of the settlement funds based on the proportional amount of challenged fees paid during the class period. Accordingly, the plan of allocation: (1) is precisely tailored to the claims in the litigation; (2) is precisely proportional to the challenged amounts paid by each Settlement Class Member; (3) avoids any need for the Settlement Administrator to make subjective determinations of any kind about the payments to the Settlement Class Members; and (4) is completely equitable as between the Settlement Class Members and avoids any intraclass conflict.

## VIII.  POTENTIAL CERTIFICATION OF THE FRAUD CLAIM

The Court also noted the difficulty in certifying a fraud claim in light of the reliance requirement. (Tr. 16:24-17:4). Plaintiff would attempt to demonstrate the existence of class wide reliance by arguing that the same invoice inflation which is at the heart of its breach of contract claims renders individual issues irrelevant. In a recent decision affirming the certification of a class under Rule 23(b)(3), the Second Circuit explained:

> In cases involving fraudulent overbilling, payment may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed. Fraud claims of this type may thus be appropriate candidates for class certification because "while each plaintiff must prove reliance, he or she may do so through common evidence (that is, through legitimate inferences based on the nature of the alleged misrepresentations at issue).

*In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 120 (2d Cir. 2013) (quoting *Klay v. Humana, Inc.*, 382 F.3d 1241, 1259 (11th Cir. 2004)).

Nevertheless, should the Court not accept this argument, the breach of contract claims can still be certified and the individual fraud claims can be released because they arise from "the identical factual predicate." *Berry v. Schulman*, 807 F.3d 600, 616 (4th Cir. 2015).

## IX.    <u>CONCLUSION</u>

For the reasons stated above, as well as in Defendants' concurrently filed supplemental briefing, and in Plaintiff's Unopposed Motion For Preliminary Approval of Class Action Settlement dated March 13, 2017, and supporting papers, the Court should conditionally certify the class, preliminarily approve the settlement, and authorize notice to the class.

Respectfully submitted,

Dated: June 2, 2017

**BROWN NERI SMITH & KHAN, LLP**

_____/s/_____
Geoffrey A. Neri, Esq.
VSB No. 72219
Ethan J. Brown, Esq. (admitted *pro hac vice*)
11766 Wilshire Blvd., Ste. 1670
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
Geoff@bnsklaw.com

Adam R. Gonnelli, Esq. (admitted *pro hac vice*)
**THE SULTZER LAW GROUP**
85 Civic Center Plaza, Suite 104
Poughkeepsie, NY 12601
Phone: (845) 483-7100
Fax: (888) 749-7747
gonnellia@thesultzerlawgroup.com

Innessa S. Melamed, Esq. (admitted *pro hac vice*)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone:  (212) 983-9330
Facsimile: (212) 983-9331
Email:  imelamed@faruqilaw.com

*Counsel for Plaintiff Run Them Sweet, LLC
and the Proposed Class*

**CERTIFICATE OF SERVICE**

I hereby certify that on June 2, 2017, I will electronically file the foregoing with the Clerk of the Court using the CM/ECF system, which will then send a notification of such filing to the following:

Demme Doufekias
Morrison & Foerster LLP (DC)
200 Pennsylvania Avenue, NW
Suite 6000
Washington, DC 20006-1888
ddoufekias@mofo.com

Penelope Athene Preovolos
Grant C. Schrader
Morrison & Foerster LLP
425 Market Street
San Francisco, CA 94015-2482
ppreovolos@mofo.com
gschrader@mofo.com

_____/s/_____
Geoffrey A. Neri, Esq.
VSB No. 72219
Brown Neri Smith & Khan, LLP
11766 Wilshire Blvd., Ste. 1670
Los Angeles, CA 90025
Phone: (310) 593-9890
Fax: (310) 593-9980
Email: Geoff@bnsklaw.com

*Counsel for Plaintiff Run Them Sweet, LLC*
*and the Proposed Class*